Gregory J. Skiff (GS7709)
**CERMELE & WOOD LLP**
2 Westchester Park Drive, Suite 110
White Plains, New York 10604
(Tel) 914.967.2753
greg@cw.legal

*Attorneys for Marimar Textiles, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARIMAR TEXTILES, INC.,** | Case No. 17-cv- |
| **Plaintiff,** | |
| **v.** | **COMPLAINT** |
| **JUDE CLOTHING & ACCESSORIES CORPORATION, JUDE CONNALLY CLOTHING AND ACCESSORIES INC., JUDE CONNALLY E-COMMERCE CORP., JUDE CONNALLY SARASOTA LIMITED LIABILITY COMPANY, JUDE CONNALLY WESTFIELD LIMITED LIABILITY COMPANY and JUDE CONNALLY, an individual,** | |
| **Defendants.** | |

Plaintiff Marimar Textiles, Inc. ("**Marimar**" or "**Plaintiff**"), by and through its attorneys, Cermele & Wood LLP, as and for its Complaint against defendants Jude Clothing & Accessories Corporation, Jude Connally Clothing and Accessories Inc., Jude Connally E-Commerce Corp., Jude Connally Sarasota Limited Liability Company, Jude Connally Westfield Limited Liability Company (collectively, the "**JC Companies**"), and Jude Connally, individually ("**Jude Connally**", together with the JC Companies, the "**Defendants**") alleges as follows:

## NATURE OF THE ACTION

1.        This is an action for copyright infringement under the Copyright Act, 17 U.S.C. §

101 *et seq.*, misappropriation of trade secrets under N.J.S.A. § 56:15-1 *et seq.*, and New Jersey common-law claims for breach of implied and/or quasi-contract, unfair competition, misappropriation of confidential information, tortious interference with contractual relations, fraud, and equitable fraud.

## THE PARTIES

2.      Marimar is a corporation organized and existing under the laws of the State of New Jersey, having a principal place of business at 1933 State Highway 35, Wall, NJ 07719.

3.      Upon information and belief, the JC Companies are corporations and limited liability companies incorporated in the State of New Jersey, each of which has a principal place of business at the same location, 320 S. Michigan Avenue Kenilworth, NJ 07033.

4.      Upon information and belief, Jude Connally, the JC Companies' namesake, is an individual who works and resides in the State of New Jersey and is the principal, owner, or member of each of the JC Companies.  Upon information and belief, Jude Connally directs and controls the activities of the JC Companies, including the infringing activities alleged herein.

5.      Upon information and belief, Jude Connally acts in concert with the JC Companies and has actively participated in and contributed to the tortious acts committed by the JC Companies that have damaged and continue to damage Marimar.

6.      Upon information and belief defendant, Jude Connally exercises complete dominion and control over the activities of the JC Companies and uses such dominion and control to commit the tortious activity described below.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 17 U.S.C. § 411(a) and 28 U.S.C. § 1331 (actions arising under the laws of the United States), § 1338(a) (actions arising under an Act of Congress relating to copyrights and trademarks) and §

1367 (supplemental jurisdiction under state statutory and common law for claims related to the federal claims).

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(a).  Defendants reside in this Judicial District, are transacting and doing business within this District, are committing the acts complained of herein within this District, and have otherwise directed their illegal conduct complained of herein to this District, causing damage to Marimar in this District.

9.      Personal jurisdiction is proper over all Defendants.  Individual defendant Jude Connally resides in the State of New Jersey. The entity Defendants are incorporated in the State of New Jersey and are registered and/or authorized to conduct business in the State of New Jersey.  Upon information and belief, each of the entity Defendants has its principal place of business in the State of New Jersey, and at least one member of each of Jude Connally Sarasota Limited Liability Company and Jude Connally Westfield Limited Liability Company resides in the State of New Jersey.

10.     The unlawful conduct complained of herein has caused, and continues to cause, injury to Marimar within this District.

11.     Defendants regularly conduct, solicit, or transact business in this District, by, among other things, offering and selling products in this District, including the infringing products alleged herein, to persons located within this District, through: (i) distributors and retailers located in this District; and (ii) the www.judeconnally.com website.

12.     Defendants regularly and systematically direct electronic activity into the State of New Jersey through their fully interactive www.judeconnally.com website, from which the infringing products alleged herein can be purchased, with the manifest intent of engaging in business within this District.  Upon information and belief, Defendants derive substantial

revenue in interstate and/or international commerce from business conducted in this District.

## MARIMAR AND ITS BUSINESS

13.    Since 1977, Marimar has supplied the US and European apparel industry with original printed and novelty textile patterns, printing over 2 million yards per year. To date, Marimar has developed a library of over 11,000 textile patterns.

14.    Marimar owns the following copyright registrations for its original textile patterns (collectively, the "**Marimar Textile Patterns**" or the "**Marimar Copyright Registrations**"):

| Title | Image | Registration No. |
|-------|-------|------------------|
| 10105 Status Geo |  | VA2-013-748 |
| 11120 Ikat |  | VA2-004-350 |

4

| 11121 Pebbles |  | VA2-004-353 |
| 11123 Groovy |  | VA2-004-343 |
| 11125 Flower Block |  | VA1-999-959 |

| | | |
|---|---|---|
| 11130 Floral |  | VA1-999-941 |
| 11147 Geo Rounded Square |  | VA2-004-355 |
| 11149 Happy Fleur D/Lis |  | VA2-004-356 |

| 11152<br>Stamparte Floral |  | VA2-004-358 |
|---|---|---|
| 11327<br>Lady Paisley | | VA2-004-349 |

15.     From March 2010 to September 2012, the JC Companies purchased thousands of yards of the Marimar Textile Patterns and other Marimar patterns (the "**Other Marimar Patterns**", together with the Marimar Textile Patterns, the "**Marimar Patterns**"), which the JC Companies used to manufacture dresses.

16.     A key and principal part of Marimar's business is the design and production of the Marimar Patterns.  Information concerning the identity and contact details for Marimar's

factories, factory pricing, manufacturing capabilities and capacities, Marimar's style numbers (between it and the factories), Marimar's wholesale prices to its customers, Marimar's profit margins, Marimar's pricing structure, print library, specifications, design, engraving and sale of the Marimar Patterns, identities of and contact details for Marimar's customers, are at all times considered and treated as highly confidential within Marimar and not shared with anyone outside of Marimar, and Marimar considers each and all of them to be its trade secrets (the "**Marimar Trade Secrets**").

17.     Marimar has developed and maintained the Marimar Trade Secrets through the expenditure of considerable time, effort and expense, and the Marimar Trade Secrets have a substantial competitive value to Marimar, forming the essential core of Marimar's business.  The Marimar Trade Secrets are not generally known and are not readily ascertainable by proper means from any publicly-available sources, are directly related to and are used in Marimar's business, and provide Marimar with a competitive advantage over those who do not have this information.  Possession of the Marimar Trade Secrets would give Marimar's competitors, and Marimar's customers, an unfair economic advantage in either competing with Marimar or cutting out Marimar as a supplier of the Marimar Patterns.

18.     Marimar makes reasonable and diligent efforts to protect and keep secret the Marimar Trade Secrets. These efforts include, without limitation, not permitting access to the information by the general public, instructing employees and consultants not to disclose the information to anyone outside of Marimar, and restricting access by Marimar employees and consultants to the Marimar Trade Secrets to a need-to-know basis.  However, some of Marimar's employees and consultants, including senior print stylist Ruth Bachmann, had direct knowledge of all of the Marimar Trade Secrets.

19.     Ms. Bachmann was an employee of Marimar from 1997 through 2012. Ms.

Bachmann also owned shares in Simply Swim LLC ("**Simply Swim**") from its inception in February 2010. Simply Swim is a privately-held company under common ownership with Marimar.  Ms. Bachmann resigned from Simply Swim on August 10, 2012, taking a MacBook laptop computer with her.  At that time, Marimar had no knowledge that the MacBook laptop contained any Marimar confidential information or any of the Marimar Trade Secrets.

<u>**DEFENDANTS' UNLAWFUL ACTIVITIES**</u>

20.     In 2012, the JC Companies employed one of Marimar's senior employees, print stylist Ruth Bachmann, who had previously had access to all of the Marimar Trade Secrets. Upon information and belief, as Marimar discovered in January 2014, when Ruth Bachmann left Marimar's and Simply Swim's employ in August 2012, she misappropriated the Marimar Trade Secrets by taking: (i) a MacBook laptop computer, onto which she had downloaded from Marimar's server digital files containing the Marimar Trade Secrets and images of the 11,000 Marimar Patterns; and (ii) other written materials containing the Marimar Trade Secrets.  Ms. Bachmann then provided them to the JC Companies, with the JC Companies' full knowledge that these were the Marimar Trade Secrets. As set forth in paragraph 20 hereinafter, Marimar did not have reason to suspect the misappropriation until January of 2014.

21.     Upon information and belief, at some time after Ms. Bachmann joined the JC Companies, the JC Companies used the Marimar Trade Secrets to directly contact Marimar's factories and place orders for fabrics bearing the Marimar Textile Patterns, using them as the basis for many Jude Connally dresses (collectively, the "**JC Companies' Infringements**", depicted in the chart below).

22.     Upon information and belief, in some cases, the JC Companies asked the factories to produce the Marimar Textile Patterns in other colorways or in larger or smaller repeats.  Upon information and belief, in some cases, the JC Companies also used the Marimar Trade Secrets to

9

order fabrics bearing some of the Other Marimar Patterns.

23.     Upon information and belief, the JC Companies contacted the factories with knowledge that Marimar's relationship with the factories was exclusive with respect to the production of the Marimar Patterns.  Upon information and belief, the JC Companies represented to the Marimar factories that they were authorized by Marimar to place the orders for the Marimar Patterns.

24.     Upon information and belief, the JC Companies knew that they were not authorized by Marimar to place orders for the Marimar Patterns, whether in the same colorways and repeats as used by Marimar or in different colorways or larger or smaller repeats.

25.     Upon information and belief, the JC Companies intended the Marimar factories to rely on the false representation, and the factories did so rely and manufactured the JC Companies' Infringements and the copies of the Other Marimar Patterns, resulting in damages to Marimar.

26.     The JC Companies had direct knowledge that Marimar owned the rights to the Marimar Patterns, including the copyright rights.  These actions by the JC Companies were willful and knowing, intending to and actually interfering with the relationship between Marimar and its factories.  These willful and knowing actions by the JC Companies resulted in a loss of profits to Marimar, profits which it would have made had Marimar had placed the orders with its factories and then sold the Marimar Patterns to the JC Companies (as Marimar had done from 2010 to 2012).  The JC Companies' Infringements and copies of the Other Marimar Patterns were produced by the JC Companies without Marimar's authorization or consent.

27.     In or around January 2014, Marimar discovered that the JC Companies were selling dresses bearing duplicates of the Marimar Patterns.  Although Marimar had known in 2012 that the JC Companies were Ms. Bachmann's new employer, Marimar did not have reason

to know of the misappropriation of the Marimar Trade Secrets by Ms. Bachmann and the Defendants until Marimar saw the JC Companies' Infringements and copies of the Other Marimar Patterns in January of 2014.  Ms. Bachmann was a highly skilled print stylist, and from 2012 to 2014, Marimar assumed that she had been hired by the JC Companies to create original textile prints for them, rather than conspiring with the JC Companies to copy the Marimar Patterns using Marimar's own commissioned factories and the Marimar Trade Secrets.

28.     In subsequent discussions with Marimar's President Nicholas Solazzo, Jude Connally admitted that Marimar owned the rights, including copyright rights, in and to Marimar Textile Patterns and Other Marimar Patterns, and agreed not to infringe the same and to compensate Marimar for the use of the Marimar Textile Patterns and the Other Marimar Patterns. Jude Connally, on her individual behalf and on behalf of the JC Companies, expressly and impliedly promised that, if they were to create additional dresses or other products bearing the Marimar Textile Patterns or Other Marimar Patterns, they would seek authorization from Marimar before using the same and promised to pay for said use.  These promises to pay for use of the Marimar Textile Patterns or Other Marimar Patterns were separate and apart from Jude Connally's and the JC Companies' promise not to infringe the Marimar Textile Patterns or Other Marimar Patterns.

29.     However, Defendants did not keep any of those promises.  Defendants have never compensated Marimar for the JC Companies' Infringements or the copying of the Other Marimar Patterns.  To the contrary, Defendants have continued their unlawful conduct.

30.     On May 9, 2016 and September 16, 2016, Marimar, through its counsel, provided written notice to Jude Connally and Jude Connally Clothing and Accessories Inc. that the JC Companies' Infringements constituted infringement of Marimar's copyright rights and demanded that the JC Companies immediately cease and desist from any further use, promotion, offer for

sale, and sale of the Marimar Textile Patterns.  Counsel for Jude Connally and Jude Connally Clothing and Accessories Inc. responded that all of the allegedly infringing dresses were made from the original fabrics bearing the Marimar Textile Patterns and Other Marimar Patterns that were shipped to them in 2010-2012.  Upon information and belief, this statement is false.  The falsity of this statement is demonstrated by, among other things, the fact that many of the JC Companies' Infringements and copies of the Other Marimar Patterns have colorways and/or repeats that were never produced and sold by Marimar to the JC Companies in 2010-2012.

31.     The falsity of Defendants' statement, and their willful and knowing infringement, is further demonstrated by the fact that *after* Marimar provided written notice to Jude Connally and Jude Connally Clothing and Accessories Inc. of the JC Companies' Infringements and copying of the Other Marimar Patterns, Defendants made one of the Marimar Textile Patterns, 10105 Status Geo, the *centerpiece* of Defendants' Spring 2017 clothing line, using that pattern on a variety of dresses and other goods.

32.     Below are comparisons between the original Marimar Textile Patterns and the JC Companies' Infringements:

| Marimar Style No. | Marimar Image | Jude Connally Image |
|---|---|---|
| 10105 Status Geo |  |  |

| | | |
|---|---|---|
| 11120<br>Ikat |  | |
| 11121<br>Pebbles | | |
| 11123<br>Groovy | | |

| | | |
|---|---|---|
| 11125<br>Flower<br>Block | | |
| 11130<br>Floral | | |



| 11327 Lady Paisley |  | |
| 11147 Geo Rounded Square | | |



| 11149 Happy Fleur D/Lis | |
| 11152 Stamparte Floral | |

33.     Below are comparisons between some of the original Other Marimar Patterns and

the JC Companies' copies:

| Marimar Style Number | Marimar Image | Jude Connally Image |
|---|---|---|
| 11083 |  |  |
| Style 07.11.05-11F |  |  |

Style 08.20.06-20A



34.  Marimar is entitled to injunctive and monetary relief for the JC Companies' willful, intentional and purposeful use and exploitation of the Marimar Textile Patterns for their own financial benefit and gain with full knowledge that such use constituted infringement of Marimar's copyright rights.

35.    Marimar is entitled to injunctive and monetary relief for the JC Companies' willful, intentional and purposeful use and exploitation of the Other Marimar Patterns for their own financial benefit and gain with full knowledge that such use constituted breach of the parties' express and implied agreements.

36.    Marimar is entitled to injunctive and monetary relief for the JC Companies misappropriation of the Marimar Trade Secrets and Marimar's confidential information.

**<u>COUNT I</u>**
(*Copyright Infringement*, 17 U.S.C. §§ 106 and 501)

37.    Marimar repeats and realleges all of the foregoing allegations as if fully set forth herein.

38.     The Defendants had access to the Marimar Textile Patterns and copied them to produce the JC Companies' Infringements.  Through their conduct, the Defendants have infringed the Marimar Copyright Registrations in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

39.     The Defendants' acts of infringement are and have been willful, intentional, and purposeful.

40.     As a direct result of the Defendants' infringement of the Marimar Copyright Registrations, Marimar is entitled to its actual damages in an amount to be proven at trial in accordance with 17 U.S.C. § 504(b).

41.     As a direct result of the Defendants' infringement of the Marimar Copyright Registrations, Marimar is entitled to the profits of the Defendants' attributable to the infringement in accordance with 17 U.S.C. § 504(b).

42.     As a direct result of the Defendants' infringement of the Marimar Copyright Registrations, Marimar is entitled to its attorneys' fees in accordance with 17 U.S.C. § 505.

43.     By reason of such infringement, the Defendants have caused, and unless restrained and enjoined will continue to cause, irreparable injury to Marimar for which there is no adequate remedy at law, in an amount not thus far determined.

44.     The Defendants' conduct in intentionally misappropriating the Marimar Textile Patterns was intended to wrongfully enrich Defendants and to deliberately and willfully injure Marimar in wanton disregard of Marimar's rights and Defendants' legal obligations.  Marimar is therefore entitled to an award of punitive damages in an amount not thus far determined.

45.     Marimar is entitled to an injunction restraining Defendants, their agents, employees, and all persons acting in concert with them from engaging in such further unlawful conduct.

## COUNT II
*(Breach of Implied and/or Quasi-Contract)*

46.     Marimar repeats and realleges all of the foregoing allegations as if fully set forth herein.

47.     The Defendants created or had created, purchased, distributed, advertised, and/or sold product copied from, and substantially similar to, the Marimar Patterns, or a derivation thereof, and published, advertised, sold, and promoted such products.  In doing so, the Defendants, or any of them, failed to seek Marimar's authorization before using the Marimar Patterns, and failed to pay Marimar for the use of Marimar Patterns in violation of the parties' express and implied agreements as to the same.

48.     Before Defendants engaged in the JC Companies' Infringements or made copies of the Other Marimar Patterns, Defendants had a years-long trade practice with Marimar, the result of the parties' express and implied agreements and their discussions, whereby Marimar was compensated for the use of the Marimar Patterns by the JC Companies purchasing all fabrics bearing the Marimar Patterns from Marimar, which, in turn, commissioned its factories to manufacture those fabrics and then sold those fabrics to the JC Companies at a price comprising the manufacturing cost plus Marimar's profit on the sale.  Defendants knew that this was Marimar's business model, and that Marimar expected such remuneration from any entity that wished to manufacture fabrics bearing the Marimar Patterns.

49.     If Marimar had been aware that Defendants were manufacturing fabrics bearing the Marimar Patterns by directly contacting Marimar's factories to order those fabrics, Marimar would have expected remuneration from Defendants in the same manner as the parties had operated from 2010 to 2012, *i.e.*, that Defendants would pay Marimar's profit margin on each sale of fabrics.

50.     Defendants have been unjustly enriched by their receipt of fabrics bearing the

Marimar Patterns, which they obtained without paying Marimar.

51.     It would be unjust for Defendants to retain the benefits of their receipt of fabrics bearing the Marimar Patterns without having to pay Marimar's profits.

52.     The Defendants' conduct in failing to pay Marimar was intended to wrongfully enrich the Defendants and to deliberately and willfully injure Marimar in wanton disregard of Marimar's rights and the Defendants' obligations.

53.     By reason of the foregoing, Defendants had an implied agreement and/or quasi-contract with Marimar, whereby Marimar was entitled to obtain its profits on each sale of fabrics bearing the Marimar Patterns.

54.     In failing to pay Marimar its anticipated profits, Defendants breached the implied agreements and/or quasi-contract that existed with Marimar.

55.     Marimar therefore is entitled to recover from Defendants the damages it has sustained and will sustain as a result of Defendants' wrongful acts as hereinabove alleged.  The amount of such damages cannot be determined at this time.

## COUNT III
### (*Unfair Competition*)

56.     Marimar repeats and realleges all of the foregoing allegations as if fully set forth herein.

57.     By taking the actions described above, Defendants failed to engage in fair play, and engaged in unfair competition and/or unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of the unfair competition law of New Jersey.

58.     As a result of Defendants' conduct, Marimar has suffered, and continues to suffer, actual losses and damages.

59.     By reason of the foregoing, Marimar therefore is entitled to recover from

Defendants the damages it has sustained and will sustain as a result of Defendants' wrongful acts as hereinabove alleged.  The amount of such damages cannot be determined at this time.

## COUNT IV
### (*Misappropriation of Confidential Information*)

60.     Marimar repeats and realleges all of the foregoing allegations as if fully set forth herein.

61.     During her employment with Marimar, Ms. Bachmann acquired knowledge of Marimar and the Marimar confidential and proprietary information.  While she was employed by Marimar and after the employment ended, Defendants knowingly conspired with Ms. Bachmann and misappropriated and misused, to their own benefit, and to the detriment and harm of Marimar, the Marimar confidential and proprietary information.

62.     The Defendants' wrongful acts have proximately caused and will continue to cause Marimar substantial injury, including diminution of value of its confidential information and other proprietary information, loss of customers, dilution of its goodwill, confusion for potential customers, and injury to its reputation.

63.     By reason of the foregoing, Marimar therefore is entitled to recover from Defendants the damages it has sustained and will sustain as a result of Defendants' wrongful acts as hereinabove alleged.  The amount of such damages cannot be determined at this time.

64.     Marimar is entitled to an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with them from engaging in such further unlawful conduct.

## COUNT V
### (*Misappropriation of Trade Secrets*, N.J.S.A. 56:15-1 *et seq.*)

65.     Marimar repeats and realleges all of the foregoing allegations as if fully set forth herein.

66.     The Marimar Trade Secrets contain information which is not generally known to the public or to other persons who can obtain economic value from its disclosure or use, is the subject of efforts by Marimar to maintain their secrecy, and derive independent economic value from not being generally known and accordingly, such information constitutes "trade secrets."

67.     Defendants misappropriated the Marimar Trade Secrets by acquiring those trade secrets when they knew or should have known that the trade secrets were being acquired from an individual or entity who owed a duty to Marimar to maintain the secrecy of its Trade Secrets or limit their use, or who acquired the Marimar Trade Secrets under circumstances giving rise to a duty to maintain their secrecy or limit their use, and thus was not permitted to disclose those Trade Secrets to Defendants.

68.     Defendants also misappropriated the Marimar Trade Secrets by disclosing or using the Marimar Trade Secrets without Marimar's implied or express consent, when Defendants knew or had reason to know that their knowledge of the Marimar Trade Secrets was derived or acquired through improper means.

69.     The Defendants' aforesaid conduct is a violation of the New Jersey Trade Secrets Act, codified at N.J.S.A. 56:15-1 *et seq*.

70.     By reason of the foregoing acts and conduct of Defendants, Marimar has and will continue to suffer great and irreparable harm and damage, which damage will be difficult to ascertain, and Marimar will be without an adequate remedy at law.

71.     Marimar is entitled to an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with them, from engaging in such further unlawful conduct and from reaping any additional commercial advantage from their misappropriation of the Marimar Trade Secrets.

72.     Marimar is further entitled to recover from Defendants the damages it has

sustained and will sustain as a result of Defendants' wrongful acts as hereinabove alleged.  The amount of such damages cannot be determined at this time.  Marimar is also entitled to recover from Defendants the gains, profits, and advantages they have obtained as a result of their wrongful acts as hereinabove alleged.  Marimar is unable to ascertain at this time the full extent of the gains, profits, and advantages Defendants have obtained by reason of their aforesaid unlawful conduct.

73.     Defendants' acts of misappropriation of the Marimar Trade Secrets were both willful and malicious, and therefore Marimar is entitled to exemplary damages.

### COUNT VI
(*Tortious Interference with Contractual Relations*)

74.     Marimar repeats and realleges all of the foregoing allegations as if fully set forth herein.

75.     Marimar entered into agreements with its factories to supply the Marimar Patterns on an exclusive basis to Marimar.

76.     With knowledge of Marimar's agreements with its factories, Defendants intentionally, maliciously and without justification interfered with those agreements, by contacting the factories and directing them to supply the JC Companies with the Marimar Patterns, thus cutting out Marimar.  Upon information and belief, Defendant represented to the Marimar factories that they were authorized by Marimar to place the orders for the Marimar Patterns, although Defendants knew they were not authorized to do so.  Defendants also had direct knowledge that Marimar owned the rights to the Marimar Patterns, including the copyright rights.

77.     These actions by the Defendants were willful and knowing, intending to and actually interfering with the relationship and agreements between Marimar and its factories.

78.     The JC Companies' Infringements and copies of the Other Marimar Patterns were produced by the JC Companies without Marimar's authorization or consent.

79.     As a direct result of the aforesaid intentional interference by Defendants, Marimar has been damaged by the loss of the benefit of the exclusivity agreements with the factories and the prospective gain from the agreements.  These willful and knowing actions by Defendants resulted in a loss of profits to Marimar, profits which it would have made had Marimar had placed the orders with its factories and then sold the Marimar Patterns to the JC Companies (as Marimar had done from 2010 to 2012).

80.     By reason of the foregoing, Marimar is entitled to recover from Defendants the damages it has sustained and will sustain as a result of Defendants' wrongful acts as hereinabove alleged.  The amount of such damages cannot be determined at this time.  Marimar is also entitled to recover from Defendants the gains, profits, and advantages they have obtained as a result of their wrongful acts as hereinabove alleged.  Marimar is unable to ascertain at this time the full extent of the gains, profits, and advantages Defendants have obtained by reason of their aforesaid unlawful conduct.

81.     Marimar is also entitled to an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with them, from engaging in such further unlawful conduct and from reaping any additional commercial advantage from their actions.

## COUNT VII
*(Tortious Interference with Prospective Economic Relationships)*

82.     Marimar repeats and realleges all of the foregoing allegations as if fully set forth herein.

83.     Marimar had an economic relationship with its factories, by which it reasonably expected to obtain economic benefits and advantages, including that the factories supplied the

Marimar Patterns on an exclusive basis to Marimar.  Marimar had this economic relationship
with its factories for many years, and the continuation of that relationship was not conditional or
dependent upon the happening of any future events.

84.     With knowledge of Marimar's economic relationships with its factories, and its
reasonable expectation of economic benefits and advantages flowing from those relationships
and those factories' production of the Marimar Patterns on an exclusive basis for Marimar,
Defendants intentionally, maliciously and without justification interfered with economic
relationships and Marimar's reasonable expectancy.

85.     In the absence of Defendants' interference, it was reasonably probable that
Marimar would have continued to receive the economic benefit it anticipated from its
relationships with the factories, which Marimar had already then been receiving for a number of
years.

86.     These actions by the Defendants were willful and knowing, intending to and
actually interfering with the relationship between Marimar and its factories.

87.     As a direct result of the aforesaid intentional interference by Defendants, Marimar
has been damaged by the loss of the economic benefit and advantage of its economic
relationships with the factories.  These willful and knowing actions by Defendants resulted in a
loss of profits to Marimar, profits which it would have made had Marimar had placed the orders
with its factories and then sold the Marimar Patterns to the JC Companies (as Marimar had done
from 2010 to 2012).

88.     By reason of the foregoing, Marimar is entitled to recover from Defendants the
damages it has sustained and will sustain as a result of Defendants' wrongful acts as hereinabove
alleged.  The amount of such damages cannot be determined at this time.  Marimar is also
entitled to recover from Defendants the gains, profits, and advantages they have obtained as a

result of their wrongful acts as hereinabove alleged.  Marimar is unable to ascertain at this time

the full extent of the gains, profits, and advantages Defendants have obtained by reason of their

aforesaid unlawful conduct.

89.     Marimar is also entitled to an injunction restraining Defendants, their officers,

agents, employees, and all persons acting in concert with them, from engaging in such further

unlawful conduct and from reaping any additional commercial advantage from their actions.

## COUNT VIII
*(Legal Fraud)*

90.     Marimar repeats and realleges all of the foregoing allegations as if fully set forth

herein.

91.     Defendants made material misrepresentations to the Marimar factories, namely

that the Defendants were authorized by Marimar to place the orders for the Marimar Patterns.

Defendants knew that they were not authorized by Marimar to place orders for the Marimar

Patterns with Marimar's factories, whether in the same colorways and repeats as used by

Marimar or in different colorways or larger or smaller repeats.  Defendants intended the Marimar

factories to rely on the false representation, and the factories did so reasonably rely and

manufactured the JC Companies' Infringements and the copies of the Other Marimar Patterns,

resulting in damages to Marimar.

92.     By reason of the foregoing, Marimar is entitled to recover from Defendants the

damages it has sustained and will sustain as a result of Defendants' wrongful acts as hereinabove

alleged.  The amount of such damages cannot be determined at this time.  Marimar is also

entitled to recover from Defendants the gains, profits, and advantages they have obtained as a

result of their wrongful acts as hereinabove alleged.  Marimar is unable to ascertain at this time

the full extent of the gains, profits, and advantages Defendants have obtained by reason of their

aforesaid unlawful conduct.

## COUNT IX
### (*Equitable Fraud*)

93.      Marimar repeats and realleges all of the foregoing allegations as if fully set forth herein.

94.      By reason of the foregoing, Marimar is entitled to an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with them, from engaging in such further unlawful conduct and from reaping any additional commercial advantage from their fraudulent actions.

**WHEREFORE**, Marimar respectfully demands that this Court enter judgment against Defendants as follows:

A.      That Defendants and each of their officers, directors, partners, employees, agents, servants and attorneys and those persons in active concert or participation with them are preliminarily and permanently enjoined from:

1.      Using the JC Companies' Infringements, the Marimar Patterns or any colorable imitation thereof in connection with the manufacturing, offering, selling, advertising or promoting the sale of any goods or services or from otherwise using the Marimar Patterns or any patterns confusingly similar thereto;

2.      Infringing Marimar's Copyright Registrations in the Marimar Textile Patterns;

3.      Unfairly competing with Marimar in any manner whatsoever; and

4.      From directly or indirectly using Marimar's Trade Secrets or developing or distributing any products using or derived from Marimar's Trade Secrets.

B.      That Defendants be required to account to Marimar for all profits resulting from

Defendants' infringing activities;

C.       That Marimar have a recovery from Defendants of all damages sustained by Marimar resulting from Defendants' infringing activities, breach of implied and/or quasi-contract, unfair competition, misappropriation of confidential information, misappropriation of trade secrets, legal fraud, equitable fraud, tortious interference with contractual relations, and tortious interference with prospective economic relationships;

D.       That Marimar have a recovery from Defendants of punitive damages;

E.       That Marimar have a recovery from Defendants of the costs of this action and Marimar's reasonable counsel fees;

F.       That Defendants be ordered to deliver up to Marimar for destruction the JC Companies' Infringements and copies; and

G.       That Marimar have all other and further relief as the Court may deem just and proper under the circumstances.

CERMELE & WOOD LLP
*Attorneys for Plaintiff*
*Marimar Textiles, Inc.*

By: _____
Gregory J. Skiff (GS7709)

Dated:  April 27, 2017

29

**JURY DEMAND**

Plaintiff respectfully demands a trial by jury on all issues.

CERMELE & WOOD LLP
*Attorneys for Plaintiff*
*Marimar Textiles, Inc.*

By: _____
Gregory J. Skiff

Dated: April 27, 2017

**DESIGNATION OF TRIAL COUNSEL**

Plaintiff hereby designates Gregory J. Skiff as trial counsel.

CERMELE & WOOD LLP
*Attorneys for Plaintiff*
*Marimar Textiles, Inc.*

By: _____
Gregory J. Skiff

Dated: April 27, 2017