UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIMAR TEXTILES, INC., <br><br> Plaintiff, <br><br> v. <br><br> JUDE CLOTHING & ACCESSORIES CORP., *et al.*, <br><br> Defendant. | Civil Action No.: 17-2900 (JLL) <br><br> OPINION |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendants Jude Clothing & Accessories Corporation, Jude Connally E-Commerce Corp., Jude Connally Sarasota Limited Liability Company, Jude Connally Westfield Limited Liability Company, and Jude Connally Zimmerman's ("Defendants") Motion to Partially Dismiss Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 13). Plaintiff Marimar Textiles, Inc. has submitted Opposition (ECF No. 16), to which Defendants have replied. (ECF No. 17). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants in part and denies in part Defendants Motion to Dismiss portions of Plaintiff's Complaint.

### I. BACKGROUND[1]

Plaintiff Marimar, a New Jersey corporation with its principal place of business located in

---

[1] This background is derived from Plaintiff's First Amended Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

Wall, NJ, brings this action seeking to recover damages from Defendants for, *inter alia*, copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq*. (ECF No. 10 ("FAC") ¶ 1-2). Defendants are New Jersey corporations and limited liability companies with their principal places of business all being in Kenilworth, NJ. (FAC ¶ 3). Individual Defendant Jude Connally, is a New Jersey resident and a "principal, owner, or member[, and exercises complete control,] of each of" the corporate Defendants. (FAC ¶ 4, 6).

"Since 1997, [Plaintiff] has supplied the US and European apparel industry with original printed and novelty textile patters, printing over 2 million yards per year. To date, [Plaintiff] has developed a library of over 11,000 textile patterns." (FAC ¶ 13). Plaintiff owns the copyrights for the following patterns, and has registered same with the U.S. Copyright Office:






(FAC ¶ 14).[2] Plaintiff asserts that Defendants "purchased thousands of yards of the [Subject Patterns]" from March 2010 through September 2010. (FAC ¶ 15). According to Plaintiff Defendant used the purchased materials to manufacture dresses. (Id.). Plaintiff asserts that certain "highly confidential information" relating to the Subject Patterns was not shared with any of its customers, and "considered [this information for each pattern] ... to be [Plaintiff's] trade secrets." (FAC ¶ 16). While maintaining the secrecy of the aforementioned information was important to Plaintiff, some of its employees received access to same on a "need-to-know basis," while others, including non-party Ruth Bachmann, "had direct knowledge of all of" Plaintiff's trade secrets. (FAC ¶ 18).

From the period of 1997 through 2012, Ms. Bachmann was employed by Plaintiff as a

---

[2] The images contained in Paragraph 14 of FAC shall collectively be referred to as the "Subject Patterns."

senior print stylist and also owned shares in Simply Swim, LLC, which is a privately held company partially owned by Plaintiff. (FAC ¶ 18-19). Ms. Bachmann resigned from Plaintiff on August 10, 2012, and took her MacBook laptop computer upon resignation. (FAC ¶ 19). Plaintiff did not know that Ms. Bachmann had Plaintiff's confidential or trade secret information on said laptop computer when she left Plaintiff's employ. (Id.).

Ms. Bachmann was then employed by Defendants. (FAC ¶ 20). Plaintiff claims that, in January 2014, it discovered that Ms. Bachmann had misappropriated Plaintiff's trade secrets "by taking: (i) a MacBook laptop, onto which she had downloaded from [Plaintiff's] server digital files containing [Plaintiff's] Trade Secrets and images of [Plaintiff's 11,000 patterns]; and (ii) other written materials containing [Plaintiff's] Trade Secrets." (Id.). According to Plaintiff, Ms. Bachmann provided Defendants with Plaintiff's trade secrets, but Plaintiff did not have reason to believe this misappropriation occurred until January 2014. (Id.).

Thereafter, Plaintiff asserts Defendants began using the information obtained from Ms. Bachmann to directly contact Plaintiff's factories, place orders for fabrics bearing the Subject Patterns, and using said fabrics in many of Defendants' dresses. (FAC ¶ 21). Defendants purportedly "knew that they were not authorized by [Plaintiff] to place orders for the [Subject Patterns], whether in the same colorways and repeats as used by [Plaintiff] or in different colorways or in larger or smaller repeats," and that Defendants falsely represented to Plaintiff's, and its factories, that they were in fact authorized to use said patterns. (FAC ¶¶ 24-26).

Plaintiff discovered the alleged infringements in January of 2014. (FAC ¶ 27). Prior to this discovery, Plaintiff knew that Ms. Bachmann was working for Defendants, but did not have reason to believe that any misappropriation or confidential information or trade secrets had taken

place. (Id.). Apparently, in a conversation between Plaintiff and Defendants, Individual Defendant "Connally admitted that [Plaintiff] owned the rights, including copyright rights, in and to [the Subject Patterns] … and agreed not to infringe on same and to compensate [Plaintiff] for the use of the [Subject Patterns]." (FAC ¶ 28). It is alleged that Defendants failed to keep their promises. (FAC ¶ 29).

Accordingly, on two separate occasions, by way of counsel, Plaintiff served Defendants written notice of the alleged infringement and a demand that Defendants "immediately cease and desist from any further use, promotion, offer for sale, and sale of" the Subject Patters. (FAC ¶ 30). Defendants' counsel asserted that the dresses were made from fabrics shipped to them between 2010 and 2012, but Plaintiff asserts that this statement is false. (Id.). "The falsity of Defendants' statement, and their willful and knowing infringement, is further demonstrated by the fact that *after* [Plaintiff] provided written notice to [Defendants] of [Defendants'] Infringements and copy of [Plaintiff's other patterns], Defendants made one of the [Subject Patterns], 10105 Status Geo, the *centerpiece* of Defendants' Spring 2017 clothing line, using that pattern on a variety of dresses and other goods." (FAC ¶ 31) (emphasis in original). Accordingly, Plaintiff brought this action asserting the following claims: Count I - Copyright Infringement in violation of 17 U.S.C. §§ 106 and 601; Count II - Breach of Implied and/or *Quasi*-Contract; Count III - Unfair Competition; Count IV - Misappropriation of Confidential Information; Count V - Misappropriation of Trade Secrets in violation of N.J.S.A. 56:15-1, *et seq.*; Count VI - Tortious Interference with Contractual Relations; Count VII - Tortious Interference with Prospective Economic Relationships; Count VIII - Legal Fraud; Count IX - Equitable Fraud; and Count X - Misappropriation of Trade Secrets in Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836.

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. ANALYSIS

Defendants move to partially dismiss Plaintiff's FAC. (ECF No. 13). Specifically, Defendants ask this Court to dismiss Count I as to the "Status GEO" patterns and the request for

attorneys' fees as to all patterns, as well as Counts II, III, V, VIII, IX, and X. (*See generally* ECF No. 13-1 ("Def. Mov. Br.")). Each cause of action shall be analyzed separately below.

### A. Count I - Copyright Infringement

Defendants' Motion regarding Plaintiff copyright infringement claim is two-fold. First, Defendants argue that Plaintiff does not own the copyright registration for "Status Geo" pattern, and is therefore barred from asserting a claim with respect to this pattern. (Def. Mov. Br. at 8-9). Next, Defendants assert that Plaintiff registered the remaining copyrights with the U.S. Copyright Office after the date of infringement and are therefore time barred from seeking attorneys' fees or statutory damages for any alleged infringement relating to these patterns.

In order to establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Brownstein v. Lindsay*, 742 F.3d 55, 77 n.16 (3d Cir. 2014) (quoting *Masquerade Novelty, Inc. v. Unique Indus, Inc.*, 912 F.2d 663, 667 (3d Cir. 1990)). A copyright registration certificate is *prima facie* evidence sufficient to meet the first prong of the analysis. *See* 17 U.S.C. § 410(c); *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 290 (3d Cir. 1991). As such, the analysis is usually focused on the second "copying" prong. As it is rarely possible to prove copying through direct evidence, copying may be proved inferentially by showing that defendant had access to the allegedly infringing copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work. *See Roth Greeting v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970).

Preliminarily, the Court is satisfied that Plaintiff has pled a *prima facie* cause of action under the Copyright Act. This is because, as to all patterns, Plaintiff has pled it is the rightful

owner and that said patterns have been registered with the U.S. Copyright Office. (FAC ¶¶ 14-15). Accordingly, there is a presumption of ownership. *See* 17 U.S.C. § 410(c); *Ford Motor Co.*, 930 F.2d at 290. Additionally, Plaintiff has properly pled that Defendants infringed on its copyrights by using the Subject Patterns, as well as Plaintiff's other patterns, without Plaintiff's authorization. (FAC ¶¶ 20-45). Accordingly, the Court is satisfied that Plaintiff has sufficiently pled a claim under the Copyright Act.

As to the "Status Geo" pattern, Defendants argue that the copyright registration is owned by Simply Swim, LLC and, therefore, Plaintiff has failed to assert proper ownership of the copyright and cannot bring a claim for infringement of same. (Def. Move. Br. at 9). However, Plaintiff avers that, while it is true that Simply Swim, LLC initially registered the "Status Geo" copyright on August 16, 2016, Simply Swim, LLC also transferred said rights in the "Status Geo" copyright to Plaintiff on October 16, 2016. (ECF No. 16 ("Pl. Opp. Br." at 6-7)). Accordingly, Plaintiff is correct that it held the rights to the "Status Geo" copyright well before this action was instituted and therefore may maintain this action. The Court finds that, at this stage in the litigation, Plaintiff has pled sufficient facts concerning the ownership and infringement of the "Status Geo" copyright and, therefore, will not dismiss this claim.

Finally, Plaintiff's are correct that Defendants' statutory damages and attorneys' fees arguments are premature. (Pl. Opp. Br. at 8). Indeed, whether statutory damages or attorneys' fees are warranted in a copyright infringement case is a question best decided after the matter has progressed through discovery and not at the motion to dismiss phase. *See City of New York v. GeoData Plus, LLC*, 537 F. Supp. 2d 443, 457 (E.D.N.Y. 2007). Accordingly, the Court denies Defendants' Motion as it pertains to statutory damages and attorneys' fees, without prejudice, with

the right to re-raise same at the summary judgment phase, consistent with *Greenfield v. Twin Vision Graphics, Inc.*, 268 F. Supp. 2d 358 (D.N.J. 2003).

### B. Count II - Breach of Implied Contract/*Quasi*-Contract

To recover on the theory of *quasi*-contract, a plaintiff must prove "that the defendant ... received a benefit, and that retention of the benefit without payment therefor would be unjust." *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 108 (N.J. Super. App. Div. 1966). *Quantum meruit*, or breach of implied contract, is a form of *quasi*-contract. *Kopin v. Orange Products, Inc.*, 297 N.J. Super. 353, 367 (N.J. Super. App. Div. 1997). "Quasi-contracts are imposed by law to bring about justice, without reference to the parties' intent." *Kopin*, N.J. Super. at 366-67. Thus, *quantum meruit* enables a party to recover the reasonable value of services rendered in the absence of a contract governing wages or remuneration. *Id.* at 367. Regardless of what this Count is entitled (breach of implied contract or *quasi*-contract), the analysis remains the same, *i.e.* whether Defendants herein retained a benefit without payment that would render same as an unjust result for Plaintiff.

Plaintiff's allegations in support of this Count essentially boil down to the fact that Defendants "cut out the middleman" and ordered their dresses directly from Plaintiff's overseas factories. Indeed, Plaintiff alleges that Defendant "commissioned [Plaintiff's] factories to manufacture those fabrics and then sold those fabrics to [Defendants] at a price comprising the manufacturing cost plus [Plaintiff's] profit on the sale." (FAC ¶ 48). Plaintiff was not aware that Defendants were contacting its factories overseas. (FAC ¶ 49). According to Plaintiff, "Defendants have been unjustly enriched by their receipt of fabrics bearing the [Subject] Patterns, which they retained without paying" Plaintiff. (FAC ¶ 50).

These facts alone are insufficient to support a claim of breach of implied contract or *quasi-contract*. Plaintiff points to no benefit it conferred upon Defendants other than the simple fact that Defendants were put in contact with Plaintiff's factories. Serving as an intermediary, and subsequently being cut out of the proverbial loop, does not in and of itself constitute a benefit Plaintiff conferred upon Defendants. As a matter of fact, Plaintiff itself admits that putting Defendants in contact with Plaintiff's factories was a necessary aspect of the parties' business relationship. (FAC ¶ 16). In sum, simply learning the identity of Plaintiff's factories, alone, cannot be said to be a benefit conferred upon Defendants for which Plaintiff expected compensation. Accordingly, the Court dismisses Count II.

### C. Count III - Unfair Competition

This Court address Plaintiff's claim for unfair competition under federal law, New Jersey state law, and the common law simultaneously. The standards for liability under these types of causes of action are nearly identical, and a finding of liability under federal law leads to a finding of liability as to the others. *See CSC Holdings, LLC v. Optimum Networks, Inc.*, 731 F. Supp. 2d 400, 410-11 (D.N.J. 2010); *see also* 15 U.S.C. § 1125(a); N.J.S.A. 56:4-1.

A claim for unfair competition is established by showing that: (1) the mark at issue is valid and legally protectable; (2) the mark at issue is indeed owned by the party seeking to use it; and (3) the use of the mark by another party to identify goods or services is likely to create confusion concerning the origin of the goods or services. *See CSC Holdings, LLC*, 731 F. Supp. 2d at 405-06; *see also* 15 U.S.C. § 1125(a). This Court has already found that the Subject Patterns are in fact owned by, and registered to, Plaintiff. Accordingly, the first two elements of the above test is satisfied. Plaintiff further alleges that Defendants' use of the Subject Patterns is likely to confuse

consumers regarding the source of the goods because the patterns utilized by Defendants are either identical to Plaintiff's Subject Patterns, or exactly the same patterns with a different color scheme. FAC ¶¶ 30-33, 56-59). Hence, the Court finds that Plaintiff has pled a *prima facie* claim for unfair competition.

### D. Count V - Misappropriation of Trade Secrets Under New Jersey Law

Defendants assert that Plaintiff's claims under New Jersey's Trade Secrets Act is time barred pursuant to the statute of limitations set forth by the Act. (Def. Mov. Br. at 14-15) (citing N.J.S.A. 50:15-8). That provision states that a claim under the New Jersey's Trade Secrets Act must "be brought within three years after the misappropriation is discovery or by the exercise of reasonable diligence should have been discovery." N.J.S.A. 50:15-8. Plaintiff, in response, points to the tolling agreement, where the parties agreed to toll the statute of limitations pending a potential amicable resolution prior to the institution of this action. (Pl. Opp. Br. at 19 (citing ECF No. 16-5)). Defendants do not reply to this argument (*see generally* ECF No. 17), and, accordingly, the Court treats their argument in favor of dismissal as abandoned, without prejudice, and with the right to re-raise same at the summary judgment phase, if necessary.

### E. Counts VIII/IX - Legal Fraud/Equitable Fraud

Defendants move to dismiss both Counts VIII and IX, which are for legal fraud and equitable fraud, respectively, asserting that the allegations supporting these Counts do not meet the heightened pleading standard for fraud-based claims. (Def. Mov. Br. at 15-19). Claims sounding in fraud must be pled under the heightened standards of Federal Rule of Civil Procedure 9(b). *See Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984). The Third Circuit has set forth the following requirements for pleading fraud:

11

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*

*Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004). With this in mind, the Court turns to New Jersey law. In order to plead a fraud-based claim in New Jersey, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) a reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (N.J. Sup. Ct. 1997).

The Court concludes that Plaintiff has not pled *prima facie* claims for legal or equitable fraud. This is because nowhere within the First Amended Complaint does Plaintiff assert the specific misrepresentations it relied upon. Moreover, Plaintiff does not state which of the Defendants was the utterer of the misrepresentations, or when or where such misrepresentations were made. Plaintiff also fails to explain how it relied on the alleged misrepresentations to its detriment. Rather, the First Amended Complaint contains generalized statements of purported misrepresentations and reliance thereon. Even when Plaintiff attempts to particularize the alleged misrepresentations, the recipient of said alleged misrepresentations was not Plaintiff, but rather Plaintiff's factories. (*e.g.* FAC ¶ 91) ("Defendants made material misrepresentations to [Plaintiff's] *factories*, namely that Defendants were authorized by [Plaintiff] to place the order for the [Subject Patterns].") (emphasis added). These allegations, alone, are insufficient to meet the

heightened pleading standard of Rule 9(b). Accordingly, the Court dismisses Counts VIII and IX for lack of particularity, without prejudice.

**F. Count X - Misappropriation of Trade Secrets in Violation of Defend Trade Secrets Act**

Defendants advance three arguments in support of dismissal of Count X. First, Defendants argue that Plaintiff's claim under the Defend Trade Secrets Act accrued prior to enactment and the statute is not retroactive, thereby prohibiting such a claim. (Def. Mov. Br. at 19-21). Defendants further argue that claim is barred by the Defendant Trade Secrets Act's statute of limitations of three years. (Def. Mov. Br. at 21-22). Finally, Defendants claim Plaintiff has failed to assert a nexus between Plaintiff's trade secrets and interstate or foreign commerce. The Court disagrees with all three arguments.

Indeed, this Court recognizes that the Defend Trade Secrets Act is not retroactive and is forward looking. *See* Pub. L. No. 114-153, § 2(e), 130 Stat. 376 (2016) (codified as amended at 18 U.S.C. § 1831 *et seq.*). However, Plaintiff asserts that the violations relating to this claim are ongoing and, at least a portion of the violations, took place after the enactment of the Act. (FAC ¶¶ 21-32). Courts have held that allegations of pre-enactment acquisition of a trade secret coupled with post-enactment continued use are sufficient to sustain a claim under the Defend Trade Secrets Act at the motion to dismiss phase. *See Brand Energy & Infrastructure Servs. v. Irex Contracting Grp.*, 2017 U.S. Dist. LEXIS 43497, at *11 (E.D. Pa. Mar. 23, 2017); *High 5 Games, LLC v. Marks*, 2017 U.S. Dist. LEXIS 9302, at *15 (D.N.J. Jan. 24, 2017). Accordingly, the Court finds Defendants' non-retroactivity argument unpersuasive and will not dismiss Count X. Similarly, Plaintiff's claim is not time barred by the three-year statute of limitations, because Plaintiff has alleged violations as recent as Spring of 2017. (FAC ¶ 2017). If Plaintiff can show that such

violations did in fact take place in Spring of 2017, then this action is timely. Moreover, as discussed above, III.D *supra*, Plaintiff has alleged that the parties have entered into a statute of limitations tolling agreement, which further negates Defendants' statute of limitations argument. Hence, at this juncture, the Court will not dismiss Count X as untimely.

Finally, the Court is satisfied that Plaintiff has made sufficient allegations to assert a nexus between the violation and interstate commerce. Plaintiff clearly alleges that Defendants improperly used Plaintiff's trade secrets to create infringing goods, which were meant to be sold, at the very least, throughout the United States. (FAC ¶¶ 30-33, 47-48, 79, 87). These allegations are sufficient to survive a motion to dismiss. Defendants are free to re-raise this argument after the completion of discovery at the summary judgment phase of the case, but the Court will not dismiss Count X at this juncture of the litigation.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint is hereby granted in part and denied in part. An appropriate Order accompanies this Opinion.

DATED: October 2nd, 2017

JOSE L. LINARES
Chief Judge, United States District Court