Gregory J. Skiff
**SKIFF LAW FIRM LLC**
28 Marlin Drive
Whippany, New Jersey 07981
(T) 201.787.8701
GJS@skifflaw.com

*Attorneys for Plaintiff Marimar Textiles, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**MARIMAR TEXTILES, INC.,**

**Plaintiff,**

**v.**

**JUDE CLOTHING & ACCESSORIES CORPORATION, JUDE CONNALLY E-COMMERCE CORP., JUDE CONNALLY SARASOTA LIMITED LIABILITY COMPANY, JUDE CONNALLY WESTFIELD LIMITED LIABILITY COMPANY and JUDE CONNALLY, an individual,**

**Defendants.**

**Case No. 17-cv-02900-ES-JSA**

**CERTIFICATION OF NICHOLAS SOLAZZO IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

NICHOLAS SOLAZZO, being of full age, certifies, as follows:

1. I am the President and principal owner of plaintiff Marimar Textiles, Inc. ("**Marimar**" or "**Plaintiff**"). I make this certification in further support of Marimar's motion brought pursuant to Federal Rule of Civil Procedure 56 for an order granting summary judgment in favor of Plaintiff and against defendants Jude Connally, individually ("**Connally**"), Jude Clothing & Accessories Corporation ("**JC Corp.**"), Jude Connally E-Commerce Corp. ("**JC E-Commerce**"), Jude Connally Sarasota Limited Liability Company ("**JC Sarasota**") and Jude Connally Westfield Limited Liability Company ("**JC Westfield**", together with Connally, JC Corp., JC E-Commerce and JC Sarasota, the "**Defendants**"), with respect to Count I (copyright

infringement) of the First Amended Complaint of Plaintiff filed on July 6, 2017 (the "**Complaint**").

2. As is set forth with supporting exhibits in my certification sworn to March 6, 2024, Marimar owns the following copyright registrations for its original textile patterns (collectively, the "**Marimar Textile Patterns**" or the "**Marimar Copyright Registrations**"):

| **Title** | **Image** | **Registration No.** |
|---|---|---|
| 10105 Status Geo |  | VA2-013-748 |
| 11120 Ikat |  | VA2-004-350 |
| 11121 Pebbles |  | VA2-004-353 |

| | | |
|---|---|---|
| 11123 Groovy |  | VA2-004-343 |
| 11125<br>Flower Block |  | VA1-999-959 |
| 11130 Floral |  | VA1-999-941 |
| 11147<br>Geo Rounded<br>Square | | VA2-004-355 |

| | | |
|---|---|---|
| |  | |
| 11149<br>Happy Fleur<br>D/Lis |  | VA2-004-356 |
| 11152<br>Stamparte Floral |  | VA2-004-358 |

| | | |
|---|---|---|
| 11327<br>Lady Paisley |  | VA2-004-349 |

3. On this basis, alone, Marimar is entitled to a presumption of ownership of the above Marimar Textile Patterns.

4. To the extent, the Court declines to exercise its discretion to grant Marimar the presumption of ownership, ownership is further established as the Marimar Textile Patterns constitute "works made for hire".

5. The Marimar Textile Patterns are works made for hire because they were created for Marimar, as employer, by its employees.

6. Notwithstanding the fact that certain employees were referred to as "independent contractors" or "freelance artists", under common law agency principles, all of Marimar's artists were in fact "employees" of Marimar.

7. For instance, Marimar provided studio office space to all of its artists, including, among other things, desk space, drawing tools and supplies, at each of its locations in New York, New Jersey and California.

8. Marimar directed its artists, regardless of whether they were paid via IRS Form W2 or 1099, to create patterns based on various themes each season. By way of example, if roses were trending in a particular year or season, Marimar would direct its artists to create a number of patterns using roses. Their work was directly supervised by Marimar's employees, Ruth Bachman and Julie King, on the East Coast, and Myra Frost, on the West Coast. Ms. Bachman, Ms. King and Ms. Frost all reported to me.

9. These artists worked for Marimar on a regular basis according to a specified schedule that Marimar created and determined and they were paid on an hourly basis. Their work and the specific patterns they created were entirely controlled and directed by Marimar at Marimar's expense.

10. The artists were not permitted to hire or pay assistants and, in fact, anyone assisting them was another employee of Marimar. They did not have their own businesses and, in fact, where they were paid on a "1099 basis" they accepted employment with Marimar to supplement their income from other sources.

11. Further demonstrating that the distinction between W2 employees and 1099 employees was a distinction without a difference, Melinda Hansen, one of Marimar's artists, was employed on both a W2 and 1099 basis.

12. The only other source used by Marimar to procure patterns for sale to its customers, was through written purchase and sale transactions with various studios in Europe. True and correct copies of a sample of these invoices are annexed collectively hereto as **Exhibit J**.

13. In the instance of works purchased from Creations Robert Vernet, located in Lyon, France, the invoice states unequivocally that "[t]his sale shall transfer to the purchaser any reproduction rights held by the Company CREATIONS ROBERT VERNET, thereby authorising

[sic] the customer to display the indication © copyright for its own benefit." (*See* Ex. J.)

14. In the instance of works purchased from Anteprima s.a.s. di Borghetto M. & C. located in Como, Italy, the invoice states unequivocally that "SELLER HEREBY ASSIGNS TO BUYER ALL RIGHT, TITLE AND INTEREST, INCLUDING ALL **COPYRIGHT**, IN AND TO THE DESIGNS WHICH ARE THE SUBJECT OF THIS INVOICE." (*See* Ex. J) (Emphasis in original.)

15. Every invoice generated from each and every purchase by Marimar from a studio contained the same or substantially similar language conveying all rights, title and interest, including copyright, to Marimar as a result of its purchase.

16. Accordingly, whether the Marimar Textile Patterns were created by artists it employed or studios from which the works were purchased, Marimar can establish and has indeed established ownership of them.

17. In addition to the foregoing, attached hereto as **Exhibit K**, is an email from Defendants' principal, Jude Connally, in contemplation of a contractual arrangement between the parties whereby Defendants would cease their infringing conduct and misappropriation of Plaintiff's trade secrets and pay Plaintiff for its patterns. In this particular email dated April 22, 2014, she asks whether she would "own" the patterns she uses, admitting that Marimar indeed owned its patterns and would need to transfer that ownership to her. (*See* Ex. K.)

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

18. Based on the foregoing, I respectfully request that Marimar's motion for partial summary judgment as to Count I (copyright infringement) be granted in its entirety together with such other and further relief as the Court deems just and proper.

*I certify under penalty of perjury that the foregoing is true and correct.*

Nicholas Solazzo (May 17, 2024 20:07 EDT)
NICHOLAS SOLAZZO

Date: May 17, 2024

# Solazzo Certification (In Further Support) 5-17-24

Final Audit Report 2024-05-18

| | |
|---|---|
| Created: | 2024-05-17 |
| By: | Gregory Skiff (gjs@skifflaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAmRg_ASS0j5EQsgzKeNosB4Foum6Hj3OM |

## "Solazzo Certification (In Further Support) 5-17-24" History

Document created by Gregory Skiff (gjs@skifflaw.com)
2024-05-17 - 11:41:01 PM GMT- IP address: 173.70.156.28

Document emailed to Nicholas Solazzo (nic@boandnic.com) for signature
2024-05-17 - 11:41:05 PM GMT

Email viewed by Nicholas Solazzo (nic@boandnic.com)
2024-05-17 - 11:44:39 PM GMT- IP address: 104.28.57.239

Document e-signed by Nicholas Solazzo (nic@boandnic.com)
Signature Date: 2024-05-18 - 0:07:49 AM GMT - Time Source: server- IP address: 76.137.60.199

Agreement completed.
2024-05-18 - 0:07:49 AM GMT